UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANA ALISSA BENNETT,<br><br>              Plaintiff,<br><br>       v.<br><br>CAROLYN W. COLVIN,<br><br>              Defendant. | Case No.  15-cv-04415-JST<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 19, 22, 23 |

Plaintiff Diana Alissa Bennett seeks judicial review of the Social Security Administration Commissioner's ("Commissioner") denial of her application for Social Security disability insurance benefits and Supplemental Security Income (SSI) disability benefits pursuant to 42 U.S.C. § 405(g).  Before the Court are Bennett's motion for summary judgment and the Commissioner's cross-motion for summary judgment. Upon consideration of the moving papers and the reasons explained below, Plaintiff's motion for summary judgment is granted in part and Defendant's cross-motion for summary judgment is denied.  Though Plaintiff requests a remand for award of benefits, the Court will remand this case for further proceedings.

**I.     BACKGROUND**

   **A.     Relevant Factual and Medical History**

Plaintiff alleges that she has been disabled since December 14, 2010.  AR 176.  Bennett is a 47-year old woman who has not worked since December 13, 2010, AR 177, and was last employed as a server at Applebee's.  AR 41.  Bennett's application for disability benefits is based upon alleged impairments including degenerative disc disease of her lumbar spine, anxiety, depression, chronic pain syndrome, obesity and the residual effects of a right ankle fracture.  ECF

No. 19 at 4.

Bennett was evaluated by Dr. Navjeet Boparai, M.D., who performed an orthopedic evaluation of Plaintiff on August 13, 2012. AR. 351-356. In the assessment, Plaintiff reports that her lower back pain started in 1996 when she tried to move a box and that the pain has gotten worse since 2005. AR. 352. Dr. Boparai was unable to assess hip joint range of motion, knee joint range of motion, straight leg raising, lower extremity strength, and palpation of the spine as the claimant reported being unable to tolerate the pain involved in the testing. AR. 354-355. Dr. Boparai did note that Plaintiff was able to walk into the exam room without assistance, though she did have difficulty walking normally and had a decreased stride length. AR. 356. Dr. Boparai was unable to comment if Plaintiff's condition would impose limitations for 12 continuous months, but found Plaintiff's maximum standing/walking capacity to be up to "four hours" and her maximum sitting capacity to be "up to six hours." AR 356.

In August, 2012, John Kiefer, Psy. D., performed a comprehensive psychiatric evaluation of Plaintiff. AR 358. Dr. Kiefer provided found that Plaintiff's ability to understand, remember and carry out short and simple instructions, and to understand and remember detailed and complex instructions was good. AR. 364. Further, Dr. Kiefer found that Plaintiff's ability to accept instruction from a supervisor, ability to interact with coworkers and ability to sustain an ordinary routine without special supervision was good. AR. 364. Dr. Kiefer found that Plaintiff's ability to complete a normal workday and workweek without interruptions at a consistent pace was fair. AR. 364. Dr. Kiefer also concluded that Plaintiff's ability to deal with changes in the work setting was good and that the likelihood of emotional deterioration in the work place was minimal. AR. 364.

Marco Bodor, M.D., examined Plaintiff for treatment of low back pain in November, 2012. AR 368. Dr. Bodor noted that there is "mild tenderness to palpation along the lower lumbar paraspinal muscles" and that "range of motion is limited in flexion, extension due to low back pain." Dr. Bodor's assessment of Plaintiff's symptoms included a right L5 lumbar radiculopathy and elevated BMI. <u>Id</u>. He recommended that Plaintiff continue home exercise and expressed that an improvement in her BMI would be most likely to give her long-term relief of her low back pain

2

symptoms.  Id.

On March 27, 2013, Janet Cain, Ph.D. performed a psychological evaluation of Plaintiff. AR 517.  Dr. Cain found that the Plaintiff's social functioning and daily living skills were moderately impaired.  AR 518.  Dr. Cain noted that Plaintiff may have difficulty with coworkers, supervisors, and the public due to "significant anxiety and depression" and that Plaintiff "will have difficulty with attendance given her medical and social/emotional difficulties."  Id.  However, Dr. Cain also found that Plaintiff's intellect "appears to be sufficiently intact to understand, carry out, and remember simple instructions" and that Plaintiff "should be able to respond appropriately to simple changes in the routine work setting, as well as safety concerns."  AR 518.

In April 2013, Plaintiff's physical therapist recommended that Plaintiff use a walker for safe gait and remarked that Plaintiff was "unsteady and able to walk short distances only due to her back pain and sciatica."  AR 639.

Lynette Leighton, M.D. completed a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment form in March 2014.  AR 827.  In reviewing Plaintiff's medical history, Dr. Leighton concluded that Plaintiff has not been capable of performing sustained sedentary or light work on a regular and continuing basis, i.e. 8 hours a day, 5 days a week, or an equivalent work schedule.  AR 827-828.  Dr. Leighton also found that Plaintiff had moderate limitation in the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances and that Plaintiff's ability to complete a normal workday and workweek without interruptions and at a consistent pace without unreasonable frequency and duration of rest periods was severely limited.  AR 829.

On March 17, 2014, Plaintiff's mental health counselor, Joni Yacoe, MA, MFT, described her treatment of Plaintiff in a letter and the results of interviews that Ms. Yacoe conducted with Plaintiff.  AR 831.  After administering the adverse childhood experiences (ACE) test to Diana, Ms. Yacoe concluded that Plaintiff had a score of four, which indicates an increased risk of both emotional and physical illness.  AR 831.

**B.     Procedural Background**

Plaintiff Diana Bennett applied for Title II Social Security Disability Insurance Benefits and Title XVI Supplemental Security Income Disability benefits on April 18, 2012.  AR 174. These claims were denied on September 6, 2012 and denied again upon reconsideration on May 6, 2013.  AR 16.  Administrative Law Judge ("ALJ") David R. Mazzi heard Bennett's case on March 24, 2014.  AR 36.  On May 22, 2014, ALJ Mazzi issued an order finding that the claimant has not been under a disability as defined under the Social Security Act.  AR 30.  The ALJ evaluated Bennet's claim using the five-step evaluation process for disability.  See 20 C.F.R. §§ 404.1520(f) and 416.920(f).

At step one, the ALJ found that the claimant had not engaged in substantial gainful activity since December 14, 2010.  AR 18.  At step two, he found that claimant had the following severe impairments: an affective mood disorder, obesity, status-post surgery of the right lower extremity, minimal degenerative disc disease of the lumbar spine, and chronic pain syndrome.  Id.  At step three, the ALJ concluded that Bennet did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).  AR 19.  Between steps three and four, the ALJ found that the claimant had the residual functional physical capacity ("RFC") to perform the full range of light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), and that she retained the abilities to engage in at least simple, repetitive tasks equating to unskilled work.  AR. 24.  The ALJ found that the claimant's medically determinable impairments "could reasonably be expected to cause the type of alleged symptoms" but that the "intensity, persistence and limiting effects of these symptoms are not found credible."  Id.  At step four, the ALJ found that Bennet was capable of performing past relevant work as a gas station cashier and that this work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.  AR 29.  Alternatively at step five, the ALJ considered Bennet's age, education, work experience, and residual functional capacity and concluded that there are other jobs that exist in significant numbers in the national that Bennet can perform.  AR 29.

1    Bennet filed a request for review of the ALJ's decision on July 22, 2015. AR 7.  This

2  request was denied on July 24, 2015.  AR 1.  Having exhausted all administrative remedies,

3  Bennet filed this action seeking judicial review of the Commission's decision.  ECF. No. 1 at 1.

**II.    Jurisdiction**

This Court has jurisdiction to review final decisions of the Social Security Administration Commissioner.  42 U.S.C. § 405(g).

**III.   Legal Standard**

The Commissioner's denial of benefits will be disturbed only if it "not supported by substantial evidence in the record or if it is based on legal error." Merrill ex rel. Merrill v. Apfel, 224 f.3d 1083, 1084-1085 (9th Cir. 2000); see 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).  Substantial evidence means "more than a scintilla but less than a preponderance." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  The Court must "review the administrative record in its entirety to decide whether substantial evidence to support the ALJ's decision exists, weighing evidence that supports and evidence that detracts from the ALJ's determination." Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).  "Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ."  Id. at 1258.  Further, the ALJ is responsible for determining credibility and resolving conflicts and ambiguity in the evidence. Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  However, courts "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).

**IV.   DISCUSSION**

Plaintiff's challenge to the Commissioner's denial of her social security insurance disability insurance centers around an alleged failure of the ALJ to provide substantial evidence or to apply the correct legal standards in his RFC finding between steps three and four.  ECF No. 19 at 15.  Specifically, Ms. Bennet argues that the ALJ's RFC finding failed to include relevant

mental impairments, improperly discounted limitations identified by Drs. Leighton, Kiefer, and Cain, and failed to incorporate limitations identified by Joni Yacoe or limitations based on Ms. Bennet's and third party testimony. Id.

### A. Ms. Bennet's Deficits in Concentration, Persistence or Pace

Plaintiff argues that the ALJ found Ms. Bennett had mild to moderate difficulties in concentration, persistence, or pace at step three of his analysis, yet erred in failing to take this into consideration in the residual functional capacity ("RFC") finding. ECF No. 19 at 15-18; see also AR 18-23. The Commissioner responds that moderate limitations do not have to be exactly mirrored in the RFC finding and that moderate deficits in concentration, persistence, or pace can be properly translated into an RFC finding limiting plaintiff to simple work equating to unskilled work. ECF No. 22 at 8-10.

In an RFC assessment, the ALJ must include all of a claimant's impairments. 20 C.F.R. §§ 404.1545, 416.945; Bray v. Commissioner of Social Security Admin, 554 F.3d 1219, 1228 (9th Cir. 2009). The Ninth Circuit and this District have held, however, that a moderate deficit in concentration, persistence, or pace need not necessarily be reflected explicitly in an RFC. See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008); see also Phillips v. Colvin, 61 F. Supp. 3d 925, 939-940 (N.D. Cal. Aug. 5, 2014). In Stubbs-Danielson, the plaintiff argued that the RFC limiting plaintiff to "simple, routine, repetitive sedentary work, requiring no interaction with the public" did not capture the deficiency in pace identified by medical testimony in the record. 539 F.3d at 1173. The Ninth Circuit found that the ALJ properly translated the plaintiff's diagnosis by limiting her to "simple tasks," Id. at 1174, holding that "an ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." Id. Thus, in reviewing whether the ALJ committed error in determining Plaintiff's RFC, the relevant inquiry is whether the medical evidence supports the ALJ's finding. Phillips, 61 F. Supp. 3d at 940.

In this case, there is medical evidence supporting an RFC assessment limiting Plaintiff to "light work" and "simple, repetitive tasks equating to unskilled work." AR 23. For instance, the ALJ gave weight to the state agency medical consultant Dr. Legarda's opinion that Plaintiff's back

pain and obesity supported an RFC limitation to light activity. AR 26, 83. As for the ability to do simple, repetitive tasks, Dr. Cain's opined that Plaintiff's "intellect appears to be sufficiently intact to understand, carry out, and remember simple instructions." AR 518. The ALJ also gave partial weight to Dr. Kiefer's testimony that Plaintiff's "concentration was within normal limits," AR 362, and that Ms. Bennet's ability to understand, remember and carry out simple and complex instructions and her ability to maintain attention and concentration was good. AR 27, 364. Further, the ALJ gave weight to Dr. Friedland's testimony that the claimant can sustain concentration, persistence, and pace for "simple one and two step mental tasks only in a work-like setting involving limited contact with co-workers and the general public." AR 28, 79. In short, there is significant medical evidence to support a finding limiting Plaintiff to "light work" and "unskilled" labor and the ALJ did not err in translating his finding of a mild to moderate limitation in concentration, persistence, and pace into a restriction to light work and simple, repetitive tasks.

While it is true that there are conflicting opinions regarding Plaintiff's ability to sustain light work and maintain a regular work schedule, the ALJ is responsible for determining credibility and resolving conflicts in the evidence. Magallanes, 881 F.2d at 750. Further, this Court must defer to the decision of the ALJ where evidence exists to support more than one rational interpretation. Drouin, 966 F.2d at 1258.

Plaintiff contends that this case is similar to Brink v. Commissioner Social Sec. Admin., 343 F. App'x 211 (9th Cir. 2009) (unpublished) in an attempt to distinguish Stubbs-Danielson. ECF No. 19 at 17-18. In Brink, the Ninth Circuit held that a hypothetical question posed to a vocational expert was inadequate because it referenced "simple, repetitive work," but did not mention the plaintiff's moderate difficulties maintaining concentration, persistence, or pace. 343 F. App'x at 212. Brink distinguished Stubbs-Danielson because "the testimony in Stubbs-Danielson . . . did not establish any limitations in concentration, persistence, or pace. Here, in contrast, the medical evidence establishes, as the ALJ accepted, that Brink does have difficulties with concentration, persistence, or pace." Brink, 343 Fed. App'x at 212.

Plaintiff's reliance on Brink is misplaced. In addition to being unpublished, in contrast to Stubbs-Danielson, Brink dealt with the situation when an ALJ must incorporate his or her own

7

findings into a hypothetical question to a vocational expert, not when an ALJ's RFC findings are inadequate.  See Rosas v. Colvin, No. 15-CV-00231-WHO, 2015 WL 9455475, at *13 (N.D. Cal. Dec. 28, 2015) (distinguishing the two cases for this reason).  Moreover, other courts have interpreted Brink as limited to cases in which medical evidence demonstrates the plaintiff's difficulties in concentration, persistence, or pace, but does not demonstrate that these may be translated into limitations to simple or repetitive work.  See Murray v. Colvin, No. C-13-01182 DMR, 2014 WL 1396408, at *4 (N.D. Cal. Apr. 10, 2014) (finding that Brink was inapposite because "[h]ere, the medical evidence supports a finding that Plaintiff is capable of performing one-to-two step instructions despite any limitations in concentration, persistence or pace"); Maidlow v. Astrue, No. EDCV 10-01970-MAN, 2011 WL 5295059, at *4 (C.D. Cal. Nov. 2, 2011) ("However, in this case, unlike the cases cited by plaintiff, and as detailed below, the medical expert, upon whom the ALJ relied both in determining plaintiff's RFC and crafting her hypothetical to the vocational expert, testified that plaintiff's deficiencies in CPP resulted in specific work restrictions—*to wit,* a restriction to simple, repetitive work.").  Yet as described above, the medical record provides ample support for the ALJ's conclusion that the Plaintiff could be limited to "light work" and "simple, repetitive tasks."

### B. Dr. Kiefer's Testimony

Plaintiff argues that the ALJ erred in overlooking Dr. Kiefer's opinion that Ms. Bennett's "ability to complete a normal workday/workweek without interruptions at a consistent pace is fair, from a psychiatric standpoint." ECF No. 19 at 18-19, No. 23 at 5-7; AR 364.  The Commissioner argues that the ALJ was not required to discuss every piece of evidence when interpreting the record and that Dr. Kiefer's opinion was consistent with Plaintiff's ability to perform unskilled work.  ECF No. 22 at 11.  The Commissioner further argues that a fair ability to complete a normal workday or workweek can be understood as meaning that Plaintiff has moderate limitations as to her ability to complete a normal workweek, and that the ALJ's final RFC findings sufficiently took such limitations into consideration.  Id. at 12.

In Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995), the Ninth Circuit held that "the Commissioner must provide 'clear and convincing' reasons for rejecting the uncontradicted

8

opinion of an examining physician . . . the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." However, an ALJ is not required to discuss evidence that is neither significant nor probative. Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).

Here, the Court is not convinced that the ALJ in fact rejected Dr. Kiefer's opinion that Ms. Bennett's "ability to complete a normal workday/workweek without interruptions at a consistent pace is fair, from a psychiatric standpoint." AR 364. As the Commissioner points out, there is no reason to assume that an opinion that Plaintiff's ability to complete a normal workday/workweek is "fair" is somehow inconsistent with the conclusion that she has moderate difficulties in concentration, persistence, or pace and that she should be limited to unskilled work. See ECF No. 22 at 12.

Moreover, even if the ALJ could be said to reject the opinion identified by Plaintiff, he gave specific and legitimate reasons for doing so. After reviewing Dr. Kiefer's testimony, the ALJ stated that he was giving partial weight to his assessment, explaining that "[w]hile his assessment is supported by his findings on evaluation of the claimant, the record suggests psychiatric symptoms that more than minimally affect the claimant's ability to perform basic work functions." AR 27. Subsequently, the ALJ mentioned testimony at the hearing level that supported this conclusion. Id. Accordingly, there was no error in the ALJ's treatment of Dr. Keifer's opinion.

### C. Ms. Bennet's Testimony

Plaintiff argues that the Commissioner did not reject Ms. Bennett's testimony by clear and convincing reasons. ECF No. 19 at 22-25; ECF No. 23 at 10-12. The Commissioner argues that the ALJ properly deemed Ms. Bennett's testimony regarding her back pain and mental impairments as incredible because it conflicted with the medical evidence, she received conservative treatment, and she had a poor work history. ECF No. 22 at 21-24.

Where an ALJ concludes that a claimant has produced objective medical evidence of an underlying impairment that might reasonably produce the pain or other symptoms alleged, the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony

about the severity of her symptoms. Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation and internal quotation marks omitted). A finding that Ms. Bennett's testimony is not credible "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds." Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015). (citations and internal quotation marks omitted).

In assessing Ms. Bennett's testimony, the ALJ came to the following conclusion:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the type of alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not found credible to the extent inconsistent with the residual functional capacity finding for the reasons explained in this decision.

AR 24. Therefore, this Court must determine whether the ALJ has provided specific, clear, and convincing reasons for rejecting Plaintiff's subjective testimony. Burrell, 775 F.3d at 1136.

Plaintiffs assert that this explanation is largely indistinguishable from the ALJ's credibility rationale that was rejected by the Ninth Circuit in Brown-Hunter v. Colvin. In that case, the Ninth Circuit reversed an ALJ's decision to reject a claimant's testimony. The ALJ's explanation for this conclusion was that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment," and did not offer further specific reasons for rejecting the testimony. Brown-Hunter, 806 F.3d at 493. The Ninth Circuit concluded this was insufficient, as the ALJ "simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination. This is not the sort of explanation or the kind of 'specific reasons' we must have in order to review the ALJ's decision." Id. at 494.

Here, the ALJ similarly stated only that Plaintiff's testimony was not credible "to the extent inconsistent with the residual functional capacity finding for the reasons explained in this decision." AR 24. The decision went on to generally review the medical evidence supporting the ALJ's RFC determination. Id. In that sense, Plaintiff is correct that the decision appears

10

1   analogous to Brown-Hunter.

2   However, following the ALJ's review of the medical evidence in support of his
3   determination, the ALJ also concluded with a summarizing paragraph describing his reasons for
4   discrediting Plaintiff's testimony.  These reasons provide sufficient basis for this Court to review,
5   and affirm, the ALJ's decision.  First, the ALJ states that "the claimant has not generally received
6   the type of medical treatment one would expect for a disabled individual."  AR 28.  He explains
7   that "the claimant's subjective pain has been almost solely treated with potent narcotics and
8   referrals to physical therapy since objective imaging does not support anything other than
9   conservative treatment."  Id.  Other district courts have affirmed decisions that discredit a
10  claimant's testimony based on inconsistency with conservative or routine treatment.  See, e.g.,
11  Vuoso v. Colvin, No. ED CV 15-1255-PLA, 2016 WL 1071576, at *8–9 (C.D. Cal. Mar. 16,
12  2016) (collecting cases that approve of reference to "conservative treatment").  The ALJ also
13  stated that "[r]eview of the claimant's work history and earnings report shows that she worked
14  only sporadically her entire adult life, which raises a question as to whether the claimant's
15  continuing unemployment is actually due to medical impairments."  AR 28.  This, too, has been
16  found by district courts to be a valid reason to discredit a claimant's testimony.  See, e.g., Ancira
17  v. Colvin, No. EDCV 14-01913-DTB, 2015 WL 7272682, at *2–3 (C.D. Cal. Nov. 17, 2015)
18  (affirming ALJ's decision to reject claimant's testimony based in part on "permissible infer[ence]
19  that plaintiff possessed a general lack of motivation to work" and the fact that plaintiff "had not
20  attempted to look for work since being released").

21  The Commissioner, in its brief, goes on to argue that various evidence in the record before
22  the ALJ and this Court support the ALJ's conclusion that Plaintiff's testimony is not credible.
23  ECF No. 22 at 22-23.  Plaintiff points out, correctly, that these are post-hoc arguments not
24  mentioned by the ALJ, and therefore cannot be considered by this Court.  See ECF No. 23 at 10-
25  11; Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  However, relying only on the ALJ's
26  decision, this Court concludes that the ALJ has given specific, clear, and convincing reasons for
27  rejecting Plaintiff's subjective testimony regarding her pain and her symptoms.  See Jones v.
28  Colvin, No. 15-CV-01900-WHO, 2016 WL 1461945, at *6–7 (N.D. Cal. Apr. 14, 2016) (review

of medical evidence in the record, combined with other specific reasons, is sufficient to reject claimant's subjective testimony).

### D.     Third Party Testimony

Plaintiff argues that the evidence provided by Mr. Purvis, Ms. Johnson, and Ms. Culver was plainly competent and that the ALJ provided an inadequate rationale for rejecting this lay witness testimony. ECF No. 19 at 26; ECF No. 23 at 12. The Commissioner argues that the ALJ gave germane reasons for discounting lay witness testimony. ECF No. 22 at 24.

Testimony provided by a lay witness as to a claimant's symptoms is competent evidence to be taken into consideration by an ALJ unless he expressly discounts such evidence and provides "reasons germane to each witness" for doing so. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). An ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)

Here, the ALJ discussed third-party statements as follows:

> The third-party statements and observations have been read and considered. These statements are found credibility (sic) to the extent consistent with the residual functional capacity finding above but otherwise are considered essentially a reiteration of the subjective allegations and discounted on the same bases as those allegations.

AR 24. Plaintiff argues that because the ALJ did not provide specific, clear and convincing reasons to reject her testimony, he has also failed to provide germane reasons to reject third-party testimony. ECF No. 19 at 26. However, the Court has concluded that the ALJ's reasoning for rejecting Plaintiff's testimony was sufficient. In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to the claimant's. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony."). As Plaintiff herself acknowledges, the additional lay witness testimony is relevant because when considered, "it

12

corroborates Ms. Bennett's allegation that she cannot perform either her past work or other work activity on a regular and continuous basis." ECF No. 19 at 27.

Plaintiff's citation to <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054 (9th Cir. 2006) is unhelpful. In <u>Stout</u>, the ALJ's decision "wholly fail[ed] to mention [third parties'] testimony about how Stout's impairments affect his ability to work." Here, by contrast, the ALJ referred to his analysis regarding Plaintiff's own testimony, and found that the additional lay witnesses testimony was a "reiteration" of Plaintiff's allegations.

Therefore, there was no error in the ALJ's partial rejection of testimony by Mr. Purvis, Ms. Johnson, and Ms. Culver.

### E.  Dr. Cain's Testimony

Plaintiff argues that the ALJ improperly rejected Dr. Cain's opinion that Plaintiff may have "significant anxiety and depression" and will have difficult with attendance "given her medical and social/emotional disorders." ECF No. 19 at 19-21, No. 23 at 7; <u>see also</u> AR 518. The Commissioner argues that the ALJ properly gave partial weight to Dr. Cain's testimony on the basis that he relied too heavily on Plaintiff's subjective accounts. ECF No. 22 at 7. In the alternative, the Commissioner argues that any error in disregarding Dr. Cain's testimony was harmless. <u>Id</u>. at 7-8.

The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician. <u>Lester</u>, 81 F.3d at 830. Even if contradicted, the opinion of an examining doctor can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. <u>Id</u>. at 830-831.

Here, the ALJ discounted Dr. Cain's report as follows:

> Partial weight is given to Dr. Cain's assessment. Other than the claimant's self-reports, the record provides scant support for a significant anxiety disorder, and the record does not support significant limitations in social functioning beyond those assessed herein.

AR 28. The ALJ also noted that Dr. Cain's opinion was based on "information obtained from the claimant regarding social interaction." AR 27.

In support of its position, the Commissioner cites to <u>Tommasetti v. Astrue</u>, 533 F.3d 1035,

1041 (9th Cir. 2008). In that case, the Ninth Circuit reviewed an ALJ's rejection of a treating physician's assessment that was "essentially a 'rehashing of the claimant's own statements,'" which was "therefore undermined by the ALJ's finding that Tommasetti was not credible." The Ninth Circuit reviewed the doctor's assessment and found "that they largely reflect Tommasetti's reports of pain, with little independent analysis or diagnosis." Id. It therefore affirmed the ALJ's decision, noting that an ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." Id. (citation omitted). The Commissioner argues that here, the ALJ also partially disregarded Dr. Cain's opinion because the opinion was based on Plaintiff's "self-reports." ECF No. 22 at 13.

Plaintiff counters by citing to Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1199 (9th Cir. 2008), and Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014). In Ryan, the ALJ's decision under review also discounted a doctor's opinion in part because it was "based too heavily on Ryan's 'subjective complaints.'" 528 F.3d at 1199. The Ninth Circuit disagreed, noting that while the doctor "did, unsurprisingly, record in a section of his evaluation entitled 'History of Present Illness,' the symptoms relayed to him by Ryan," the report also "recorded several of [the doctor's] own clinical observations," including odd behavior and mannerisms, rapid speech, that the claimant was "easily agitated and appears to be very angry," and the claimant's "anxious, distraught, nervous, shaky, and edgy" affect. Id. The Ryan court concluded that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports his ultimate opinion with his own observations." Id. at 1199-1200. Similarly, Ghanim reached the same conclusion in regards to a doctor's evaluation that "discuss[es] the provider's observations, diagnoses, and prescriptions, in addition to Ghanim's self-reports." 763 F.3d at 1162.

The Court has already concluded that the ALJ properly found that Plaintiff's testimony was not credible. The question is therefore whether Dr. Cain's assessment indeed relies "to a large extent" on Plaintiff's own statements, and therefore falls under Tommasetti, or whether it also includes Dr. Cain's own observations, as in Ryan and Ghanim.

14

The Court concludes that the ALJ has accurately described Dr. Cain's report. Dr. Cain writes that "[t]he claimant states that in addition to her lower back pain and sciatica she has significant anxiety and depression." AR 517. She relies on Plaintiff's own history for her finding: "Information obtained from the claimant regarding social interaction indicates that the ability to relate is moderately impaired." Id. It is true that Dr. Cain also includes a handful of her own observations in her assessment. But these observations do not particularly suggest the opinions she eventually offers. She states that the "claimant's speech is average in tone, tempo, and volume," and that she is "polite, cooperative." Id. She finds the claimant's judgment, abstract thinking, short-term memory, and intellectual abilities to be intact or average, and writes that "[o]n this evaluation date she presents as a polite, cooperative individual with moderate depression and anxiety." Id. Given the substance of these observations, it is unclear how Dr. Cain could reach her opinions regarding Plaintiff's work limitations without also relying "to a large extent" on Plaintiff's own self-reports. See Verduzco v. Colvin, No. 14-CV-02698-BLF, 2015 WL 4881201, at *6 (N.D. Cal. Aug. 14, 2015) ("Because Dr. Farr necessarily must have relied upon Plaintiff's self-reports as to the level of her pain . . . the ALJ properly could have rejected Dr. Farr's opinion based upon an appropriate adverse credibility finding with respect to Plaintiff."); Sampson v. Colvin, No. 1:14-CV-03136-JTR, 2015 WL 3970415, at *9 (E.D. Wash. June 29, 2015) ("The fact that Dr. Mabee could not rely on psychological testing to assess Plaintiff's impairments, and did not personally observe Plaintiff suffering from any mental disorders, suggests that Dr. Mabee instead relied mostly on Plaintiff's self-reports.").

Plaintiff also contends that the ALJ "inaccurately" describes the record in contrast to Dr. Cain's report. ECF No. 19 at 19. She offers numerous pages of the record as evidence that the ALJ wrongly described it as providing "scant support" for Dr. Cain's conclusion. Id. However, this Court reviews the ALJ's decision only for substantial evidence and for lack of legal error; it does not independently re-evaluate the record and the ALJ's characterization of it. Here, the ALJ provided sufficient reasons, under Tommasetti, to give Dr. Cain's opinion partial weight. Accordingly, there is no reason to reverse the ALJ's treatment of Dr. Cain's assessment.

15

### F.     Dr. Leighton's Testimony

Plaintiff argues that the ALJ erred in rejecting Dr. Leighton's testimony without providing clear and convincing or specific and legitimate reasons. ECF No. 19 at 21-22; see also Lester, 81 F.3d at 830-831  Plaintiff also argues that the ALJ improperly substituted his own medical opinion for that of a qualified psychologist in rejecting Dr. Leighton's opinion. ECF No. 19 at 22. The Commissioner argues that the ALJ properly rejected Dr. Leighton's testimony because it conflicted with the medical evidence as a whole and is internally inconsistent. ECF No. 22 at 14-15. The Commissioner also argues that the ALJ did not substitute his own opinion for that of Dr. Leighton's and that it is the ALJ's duty to resolve conflicts in the medical evidence. ECF No. 22 at 16-17.

As noted, the ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician and specific and legitimate reasons supported by substantial evidence in the record for rejecting a contradicted opinion. Lester, 81 F.3d at 830-831. In rejecting the opinion of an examining doctor, the ALJ can provide a detailed summary of the facts and conflicting clinical evidence, state his interpretations of the relevant evidence, and make findings. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citing Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989)). But the ALJ "must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988).

The ALJ provided the following rationale in assessing Dr. Leighton's testimony:

> Little weight is given to Dr. Leighton's conclusory and unsupported opinion. Dr. Leighton hardly qualifies as a treating source, and the record as a whole does not support her opinion based on the low back pain or depression. The reports in the claimant's chart fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled, and the doctor did not specifically address this weakness.

AR 26-27.

This assessment of Dr. Leighton's testimony does not meet the "specific and legitimate reasons" supported by "substantial evidence" standard outlined by the Ninth Circuit in Lester. While the ALJ may reject the opinion of a physician that is "conclusory, brief, and unsupported by

16

the record as a whole," Batson v. Comm'r of Soc. Sec. Admin., F.3d 1190, 1195 (9th Cir. 2004), it must do so with more than a statement that the opinion generally is not supported by the record. Reddick, 157 F.3d at 725.  Thus, an ALJ errs when he "rejects medical opinion or assigns it little weight" while only "criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  Here, the ALJ's statement that "the record as a whole does not support" Dr. Leighton's conclusion is boilerplate. The fact that Dr. Leighton is not a treating physician is not enough; the ALJ must still provide "specific and legitimate reasons" supported by "substantial evidence" in rejecting her testimony. Lester, 81 F.3d at 830-831.

The ALJ does offer, as explanation for his rejection, the argument that the claimant's charts "failed to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled." AR 27.  However, as Plaintiff points out, this appears to be speculation, as the ALJ does not specify which clinical and laboratory abnormalities one should expect, nor does he provide any support for this conclusion.  See Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985) (rejecting ALJ's conclusion that a doctor's opinion might reflect "personal judgments regarding disability" as speculation).  While the Commissioner correctly points out that the ALJ is responsible for resolving conflicts in the evidence, Magallanes, 881 F.2d at 750, ECF No. 22 at 10-11, this does not entitle the ALJ to reject an evaluating doctor's opinion based on his own personal medical conjecture.  The Commissioner also argues that Dr. Leighton's opinion should be discounted because it is "internally inconsistent," and points to other testimony and evidence in the record that contradict it.  ECF No. 22 at 15-16.  However, none of these reasons were offered by the ALJ in his decision, and so they cannot be considered by this Court.

Accordingly, the ALJ's discounting of Dr. Leighton's opinion is erroneous.  An ALJ's decision can nevertheless be affirmed in the face of legal error if the Court concludes that such error was harmless, meaning that "it is inconsequential to the ultimate nondisability determination." Brown-Hunter, 806 F.3d at 492 (quoting Treichler v. Comm'r of Soc. Sec. Admin, 775 F.3d 1090, 1099 (9th Cir. 2014)).  In regards to Dr. Leighton's opinion, the Commissioner offers no argument that the opinion is harmless.  As described by the ALJ, Dr.

Leighton concluded that "the claimant has been unable to perform sustained sedentary work on a regular and continuing basis since December 2010," and "assessed that [the claimant] could not work because of low back pain treated by opiates." AR 26. This opinion appears to be in conflict with the ALJ's RFC determination, and therefore is not inconsequential to it. Therefore, the ALJ's error in discounting Dr. Leighton's opinion was not harmless.

### G. Joni Yacoe's Testimony

Plaintiff argues that the ALJ's rejection of Ms. Yacoe's testimony was impermissibly conclusory. ECF No. 19 at 25-26. The Commissioner argues that the ALJ correctly discounted Ms. Yacoe's opinion because it was not supported by the evidence in the record and because her testimony relied too heavily on Ms. Bennet's subjective complaints. ECF No. 22 at 17-20.

"Other sources" are not entitled to the same difference afforded to "acceptable medical sources" as defined in 20 C.F.R. § 404.1513(a). Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012); 20 C.F.R § 404.1513(a); SSR 06-03p. An ALJ may discount testimony from an "other source" if he gives reasons germane to each witness for doing so. Molina, 674 F.3d at 1111; see also Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only give germane reasons for discrediting the testimony of lay witnesses."). An ALJ provides germane reasons for rejecting the testimony of an "other source" witness when such testimony is substantively similar to subjective testimony that has already been validly rejected. Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009).

In reviewing Ms. Yacoe's testimony, the ALJ explained:

> Little weight is given to this unacceptable medical source's conclusory and unsupported opinion, which is contradicted by the weight of the evidence of record. She appears to have given far too much consideration to the claimant's self-reported limitations.

AR 28. The ALJ therefore appears to have given two reasons for rejecting Ms. Yacoe's opinion: first, it was contradicted by the record; and second, it relied too much on Plaintiff's self-reports.

In regards to the first reason, Plaintiff contends, as she did in regards to Dr. Leighton's opinion, that this statement is conclusory and boilerplate, and that the ALJ "fails to explain what he means by Ms. Yacoe's opinion being contradicted by the weight of the evidence of record."

18

ECF No. 19 at 25. Unlike Dr. Leighton, however, Ms. Yacoe is not an examining or treating physician, and therefore the ALJ must only offer germane reasons for rejecting her opinion. The Ninth Circuit has held that "[i]nconsistency with medical evidence" is a germane reason for rejecting testimony. See Bayliss v. Barnhart, 427 F.3d at 1218 (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)). True, the ALJ's decision would have been more complete if it had referenced the specific evidence or findings elsewhere in the record that contradicted Ms. Yacoe's assessment. See, e.g., Parks v. Colvin, No. 14-CV-04193-NJV, 2016 WL 705932, at *6 (N.D. Cal. Feb. 23, 2016) (ALJ stated the discounted statements were outweighed by evidence regarding Plaintiffs' limited functional abilities); McKnight v. Comm'r of Soc. Sec., No. 1:12-CV-00726-AWI, 2013 WL 3773864, at *9 (E.D. Cal. July 17, 2013) (ALJ pointed to other healthcare providers' notes that contradicted discounted statements). However, at least one other district court has found that when, as here, the ALJ concludes that a witness's testimony is inconsistent with the medical evidence in the record, and discusses that medical evidence thoroughly, he or she has given a germane reason for discounting that statement. See Reyes v. Colvin, No. EDCV 14-01463-JEM, 2015 WL 1383144, at *8 (C.D. Cal. Mar. 25, 2015).

Moreover, the ALJ also discounted Ms. Yacoe's opinion because it relied "far too much" on Plaintiff's own allegations. AR 28. As noted, an ALJ may properly discount a claimant's subjective allegations, and then discredit the statements of other witnesses when they are substantively similar to the claimant's. Valentine, 574 F.3d at 694. Accordingly, this is a germane reason for discounting Ms. Yacoe's opinion.[1]

---

[1] Though the parties do not discuss it, the Court acknowledges the Ninth Circuit's recent decision in Dale v. Colvin, 823 F.3d 941, 945 (9th Cir. 2016), which held that when an ALJ divides an "other" witnesses's testimony into two parts, and only provides germane reasons for discounting one of those parts, it is error for the ALJ to discount the entire opinion. Here, it is arguable that Ms. Yacoe's opinion could be divided into two parts, with the first discussing Plaintiff's responses to an ACE (adverse child experiences) test, AR 831-832, and the second discussing Plaintiff's impairments more generally, AR 833-837. It is also arguable that while the ALJ's statement that Ms. Yacoe relies "far too much" on Plaintiff's own statements certainly applies to the first part of Ms. Yacoe's opinion, it may not apply to the second part. However, the ALJ does not divide the opinion into two parts in this way, and Dale explicitly limited its holding only to situations where the ALJ's own decision recognized a division. See Dale, 823 F.3d at 946 n.3

**CONCLUSION**

In sum, this Court concludes that the ALJ did not error in his treatment of the evidence in Plaintiff's record, with exception of Dr. Leighton' report. In regards to Dr. Leighton's report, the ALJ's decision must be vacated. Therefore, Plaintiff's summary judgment motion is granted in part, and the Commissioner's summary judgment motion is denied.

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000)). In this instance, because it cannot be determined from the ALJ's rationale whether he adequately considered the testimony of Dr. Leighton, the Court cannot determine whether the ALJ's RFC finding was supported by substantial evidence. Further, given the significant limitations opined by Dr. Leighton, the Court cannot conclude that such error was harmless, or "inconsequential to the ultimate nondisability determination." Brown-Hunter, 806 F.3d at 492 (quoting Treichler v. Comm'r of Soc. Sec. Admin, 775 F.3d 1090, 1099 (9th Cir. 2014)).

Plaintiff contends that because crediting this evidence "establishes that Ms. Bennett is disabled," the proper remedy is to enter judgment in favor of Plaintiff and remand for the immediate award of benefits. ECF No. 19 at 28. This contention is unpersuasive. Instead, the ALJ's final decision is vacated and remanded for further administrative proceedings consistent with this Order.

IT IS SO ORDERED.

Dated: August 16, 2016

_____
JON S. TIGAR
United States District Judge